IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; and CHARLES A. WHOBREY, as Trustee,<br><br>    *Plaintiffs,*<br><br>v.<br><br>STEELCASE INC., a Michigan corporation; and SC TRANSPORT, INC., a Michigan corporation,<br><br>    *Defendants*. | Case No. 24-cv-663<br><br>Judge<br><br>Magistrate Judge |

**COMPLAINT TO MODIFY AND/OR ENFORCE
ARBITRATION AWARD UNDER THE MULTIEMPLOYER
PENSION PLAN AMENDMENTS ACT OF 1980**

  Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund and Charles A. Whobrey, one of its present trustees, for a cause of action against Defendants, allege as follows:

**JURISDICTION AND VENUE**

  1. This is an action to modify and/or enforce an arbitration award issued under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). *See* 29 U.S.C. § 1401(b)(2).

  2. This Court has jurisdiction over this action pursuant to 29 U.S.C. §§ 1401(b)(2) and 1451(c).

  3. Venue lies in this Court under 29 U.S.C. §§ 1401(b)(2) and 1451(d) because the Central States, Southeast and Southwest Areas Pension Fund ("Pension Fund") is administered at its principal place of business in Chicago, Illinois. Venue is also proper pursuant to Article XIV, Section 10 of the Pension Fund's Trust Agreement and Section 6(b)(2) of Appendix E to the Pension Fund's Plan, which provide for venue in this Court.

## PARTIES

4. The Pension Fund is a multiemployer pension plan within the meaning of 29 U.S.C. §§ 1002(37) and 1301(a)(3).

5. Plaintiff Charles A. Whobrey is a present trustee and fiduciary of the Pension Fund within the meaning of 29 U.S.C. § 1002(21)(A), and he and his fellow trustees are the plan sponsor of the Pension Fund within the meaning of 29 U.S.C. § 1301(a)(10). The Trustees administer the Pension Fund at 8647 West Higgins Road, Chicago, Illinois.

6. Pursuant to 29 U.S.C. §§ 1401(b)(2) and 1451(a)(1), the Trustees, by and through their designated trustee Charles A. Whobrey, are authorized to bring this action on behalf of the Pension Fund, its participants, and its beneficiaries.

7. Defendant Steelcase Inc. ("Steelcase") is a corporation organized under the laws of the State of Michigan.

8. Defendant SC Transport, Inc. ("SC Transport") is a corporation organized under the laws of the State of Michigan.

## CLAIM FOR RELIEF

**I. Background**

9. Under MPPAA, all trades or businesses under common control are deemed to be a single employer for purposes of calculating and assessing withdrawal liability. 29 U.S.C. § 1301(b)(1); *see also, e.g., Cent. States, Se. & Sw. Areas Pension Fund v. SCOFBP, LLC*, 668 F.3d 873, 876 (7th Cir. 2011).

10. On December 29, 2018 (the date of the withdrawal at issue in this case), Steelcase and SC Transport were under common control with each other within the meaning of 29 U.S.C. § 1301(b)(1) and the regulations promulgated thereunder.

11. On December 29, 2018, Steelcase, SC Transport, and all other trades or businesses under common control with them were a group of trades or businesses under common control (the "SC Transport Controlled Group") and therefore constituted a single employer within the meaning of 29 U.S.C. § 1301(b)(1) and the regulations promulgated thereunder.

12. The SC Transport Controlled Group is the "employer" for purposes of the determination and assessment of withdrawal liability under Title IV of ERISA.

13. During relevant times, SC Transport was bound by collective bargaining agreements with a certain local union affiliated with the International Brotherhood of Teamsters under which SC Transport was required to make contributions to the Pension Fund on behalf of certain of its employees.

14. On December 29, 2018, the SC Transport Controlled Group (including SC Transport and Steelcase) permanently ceased to have an obligation to contribute to the Pension Fund and/or permanently ceased all covered operations, thereby effecting a complete withdrawal from the Pension Fund within the meaning of 29 U.S.C. § 1383 (the "Withdrawal").

15. As a result of the Withdrawal, on or about July 12, 2019, the SC Transport Controlled Group received a notice and demand for payment of Assessment Number 7583810-WL190050-01 issued by the Pension Fund in accordance with 29 U.S.C. §§ 1382(2) and 1399(b)(1).

16. In the notice and demand referenced in paragraph 15, the Pension Fund notified the SC Transport Controlled Group that the liability was required to be discharged in a lump sum of $33,652,457.49 or in 240 monthly payments of $76,320.61, with the first monthly payment due on August 1, 2019, and the final monthly payment due on July 1, 2039 (the "Withdrawal Liability").

17. MPPAA provides that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1).

18. In February 2020, Steelcase and SC Transport initiated arbitration with the American Arbitration Association ("AAA") to challenge the Withdrawal Liability pursuant to 29 U.S.C. § 1401(a). The arbitration was given AAA Case No. 01-20-0000-4151 (the "Arbitration").

19. Under 29 U.S.C. § 1399(c)(1)(C)(i)(II), one of the amounts a multiemployer pension fund must use in calculating a withdrawn employer's withdrawal liability payment schedule is the "highest contribution rate at which the employer had an obligation to contribute under the plan during the 10 plan years ending with the plan year in which the withdrawal occurs."

20. In 2014, Congress enacted the Multiemployer Pension Reform Act of 2014 ("MPRA"). Prior to MPRA, all contribution rate increases pursuant to a rehabilitation plan were included in determining the highest contribution rate under 29 U.S.C. § 1399(c)(1)(C)(i)(II). MPRA added the text that appears in 29 U.S.C. § 1085(g)(3), which provides that certain contribution rate increases that go into effect after 2014 are to be excluded when determining an employer's highest contribution rate under 29 U.S.C. § 1399(c)(1)(C)(i)(II).

21. Specifically, 29 U.S.C. § 1085(g)(3) provides:

**(3) Contribution increases required by . . . rehabilitation plan**

    **(A)** **In general**. Any increase in the contribution rate (or other increase in contribution requirements unless due to increased levels of work, employment, or periods for which compensation is provided) that is required or made in order to enable the plan to meet the requirement of the . . . rehabilitation plan shall be disregarded in determining the allocation of unfunded vested benefits to an employer under section 1391 of this title and in determining the highest contribution rate under section 1399(c) of this title . . . .

  **(B)**  **Special rules**. For purposes of this paragraph, any increase in the contribution rate (or other increase in contribution requirements) shall be deemed to be required or made in order to enable the plan to meet the requirement of the . . . rehabilitation plan except for increases in contribution requirements due to increased levels of work, employment, or periods for which compensation is provided or additional contributions are used to provide an increase in benefits, including an increase in future benefit accruals, permitted by subsection . . . (f)(1)(B).

  22. The contribution rate used by the Pension Fund under 29 U.S.C. § 1399(c)(1)(C)(i)(II) to determine the Withdrawal Liability payment schedule was $342.00 per week. This was the contribution rate in effect as of December 29, 2018 (the date of the Withdrawal).

  23. At all relevant times, the Pension Fund was operating under a rehabilitation plan as described in 29 U.S.C. § 1085(a)(2)(A) and (e).

**II.** **The Arbitration Opinion and Award**

  24. In the Arbitration, SC Transport and Steelcase challenged the Withdrawal Liability by asserting that the Pension Fund was not entitled to use the $342.00 per week contribution rate in calculating the Withdrawal Liability payment schedule.

  25. SC Transport and Steelcase primarily argued that, under 29 U.S.C. § 1085(g)(3), the Pension Fund was not allowed to include post-2014 contribution rate increases in calculating the Withdrawal Liability payment schedule. Under that argument, the Pension Fund would be required to use a contribution rate of $290.00 per week (which was the highest contribution rate that SC Transport paid prior to January 1, 2015) to calculate the Withdrawal Liability payments. Using that rate to calculate the Withdrawal Liability payment schedule would reduce the SC Transport Controlled Group's monthly payment amount from $76,320.61 to $64,716.31.

26. In contrast, in the Arbitration, the Pension Fund argued that using the contribution rate of $342.00 per week to calculate the Withdrawal Liability payment schedule was permissible under 29 U.S.C. § 1085(g)(3). Specifically, the Pension Fund argued that the post-2014 contribution rate increases paid by SC Transport to the Pension Fund were (at least to a large extent) not "required or made in order to enable the plan to meet the requirement of the . . . rehabilitation plan." 29 U.S.C. § 1085(g)(3)(A). The Pension Fund further argued that all of SC Transport's post-2014 contribution rate increases were "used to provide an increase in benefits, including an increase in future benefit accruals, permitted by subsection . . . (f)(1)(B)." 29 U.S.C. § 1085(g)(3)(B).

27. The Pension Fund also argued, in the alternative, that in calculating the Withdrawal Liability payment schedule it should be permitted to include those portions of SC Transport's post-2014 contribution rate increases attributable to funding an increase in benefits. In support of this alternative argument, the Pension Fund submitted an expert report from actuary Daniel V. Ciner, which showed that the effective contribution rate using only those portions of the post-2014 contribution rate increases that were projected to fund increased benefits would be $320.94 per week. Using that rate to calculate the Withdrawal Liability payment schedule would reduce the SC Transport Controlled Group's monthly payments from $76,320.61 to $71,620.87.

28. SC Transport and Steelcase also made various arguments that, in calculating the Withdrawal Liability, the Pension Fund was required to use certain contribution rates lower than $290.00 per week, such as $170.00 per week (which was a contribution rate that SC Transport had last paid to the Pension Fund in 2004), or, in the alternative, $258.00 per week (which was a contribution rate that SC Transport had last paid to the Pension Fund in July 2013).

29. In contrast, the Pension Fund argued that it properly included all pre-2015 contribution rate increases (as well as all post-2014 contribution rate increases) in determining the Withdrawal Liability payment schedule under 29 U.S.C. § 1399(c)(1)(C)(i)(II).

30. The parties each moved for summary judgment in the Arbitration, and they submitted multiple briefs relating to each other's and their own motions.

31. On December 27, 2023, the arbitrator issued an opinion and award, dated December 26, 2023 (the "Opinion and Award"), a true and accurate copy of which is attached hereto as Exhibit A.

32. In the Opinion and Award, the arbitrator granted in part and denied in part the Pension Fund's motion for summary judgment and granted in part and denied in part SC Transport and Steelcase's motion for summary judgment. Specifically, the arbitrator concluded that the Pension Fund was not permitted to include any of SC Transport's post-2014 contribution rate increases in calculating the Withdrawal Liability payment schedule. (Ex. A at pp. 6-8.) However, the arbitrator rejected SC Transport and Steelcase's argument that the Pension Fund was required to use a contribution rate lower than the highest pre-2015 contribution rate of $290.00 per week. (Ex. A at pp. 9-10.)

33. Accordingly, in the Opinion and Award, the arbitrator ordered (Ex. A at 11-12):

> The [Pension] Fund shall re-compute Claimants' [(SC Transport and Steelcase's)] withdrawal liability using the highest contribution rate of $290 per week. The [Pension] Fund shall credit any overpayments generated by this recalculation, plus applicable interest, to reduce or eliminate the first installment payments scheduled to be paid by Claimants after the effective date of this Order.

34. The arbitrator further ordered (Ex. A at 11) that "Claimants' overpayment, plus applicable interest, should be applied to monthly installment payments due after the effective date of this Opinion until the overpayment is eliminated."

### III. The Opinion and Award Should Be Modified and/or Enforced

35. MPPAA provides that "[u]pon completion of the arbitration proceedings in favor of one of the parties, any party thereto may bring an action, no later than 30 days after the issuance of an arbitrator's award, in an appropriate United States district court in accordance with section 1451 of this title to enforce, vacate, or modify the arbitrator's award." 29 U.S.C. § 1401(b)(2).

36. Here, the Opinion and Award should be modified and/or enforced as described below.

37. *First*, the part of the Opinion and Award concluding that the Pension Fund was not permitted to include any post-2014 contribution rate increases in calculating the Withdrawal Liability payments should be modified, as the arbitrator's conclusion that the Pension Fund was not permitted to include post-2014 contribution rate increases in its calculation of the Withdrawal Liability payments is erroneous and contrary to applicable law.

38. The Pension Fund's benefit formula, which has been in effect since prior to MPRA's passage, provides that each participant accrues benefits equal to 1% of all contributions made on his or her behalf. Accordingly, each post-2014 increase in SC Transport's contribution rate resulted in a corresponding increase in the benefit accruals of SC Transport's covered employees.

39. Because SC Transport's post-2014 contribution rate increases went to funding corresponding increases in benefit accruals, those contribution rate increases were not increases "required or made in order to enable the plan to meet the requirement of the . . . rehabilitation plan"

within the meaning of 29 U.S.C. § 1085(g)(3)(A). Specifically, for reasons that the Pension Fund will further explain in any dispositive briefing in this matter, contribution rate increases "required or made in order to enable the plan to meet the requirement of the . . . rehabilitation plan," 29 U.S.C. § 1085(g)(3)(A), do not include rate increases that go to funding additional benefit accruals, as opposed to rate increases that exclusively go to reducing a pension fund's unfunded vested benefits.

40. In addition, and as the Pension Fund will further explain in any dispositive briefing in this matter, SC Transport's post-2014 contribution rate increases are to be included in calculating the Withdrawal Liability payment schedule under 29 U.S.C. § 1085(g)(3)(B) because they were "used to provide an increase in benefits, including an increase in future benefit accruals, permitted by subsection . . . (f)(1)(B)." 29 U.S.C. § 1085(g)(3)(B). Specifically, as explained above, each of those contribution rate increases were used to provide an increase in future benefit accruals by operation of the Pension Fund's 1% accrual formula.

41. Accordingly, the Opinion and Award should be modified so that it upholds the Withdrawal Liability payment schedule set forth in the Pension Fund's notice and demand referenced in paragraphs 15 and 16 above (*i.e.*, monthly payments of $76,320.61 due from August 2019 through July 2039).

42. In the alternative, and if the Court does not grant the relief requested in paragraph 41, the Opinion and Award should be modified to provide that, in calculating the Withdrawal Liability payment schedule, the Pension Fund was permitted to use all portions of SC Transport's post-2014 contribution rate increases that were used to fund an increase in benefits. If the Court modifies the Opinion and Award as such, the modified Opinion and Award should provide that the correct monthly payment schedule for the Withdrawal Liability consists of 240 monthly

payments of $71,620.87, with the first such payment due on August 1, 2019, and the last such payment due on July 1, 2039.

43. Again, 29 U.S.C. § 1085(g)(3)(B) provides that post-2014 contribution rate increases for which the additional contributions "are used to provide an increase in" benefits or benefit accruals "permitted by subsection . . . (f)(1)(B)" are to be included in determining an employer's highest contribution rate. Thus, at the very least, 29 U.S.C. § 1085(g)(3)(B) permits the Pension Fund to include the portions of SC Transport's post-2014 contribution rate increases for which the additional contributions were attributable to funding "an increase in . . . benefit accruals." 29 U.S.C. § 1085(g)(3)(B). After all, that portion of the rate increases does not "enable" the Pension Fund "to meet the requirement of" its "rehabilitation plan" because it goes to funding the associated additional benefit accruals, not to increasing the Pension Fund's funding levels. 29 U.S.C. § 1085(g)(3)(A).

44. *Second*, to the extent the Court does not modify the Opinion and Award as requested in paragraphs 41 or 42 above, the Court should enforce the portion of the Opinion and Award in which the arbitrator found that, in calculating the Withdrawal Liability payments, the Pension Fund is permitted to use the highest pre-2015 contribution rate of $290.00 per week. If the Court enforces the Opinion and Award as such, the Opinion and Award (which does not set forth a revised payment schedule) should also be modified to provide that the correct monthly payment schedule for the Withdrawal Liability consists of 240 monthly payments of $64,716.31, with the first such payment due on August 1, 2019, and the last such payment due on July 1, 2039.

45. Specifically, for reasons that the Pension Fund will explain more fully in any dispositive briefing in this matter, SC Transport and Steelcase's arguments that, in calculating the Withdrawal Liability payments, the Pension Fund should have used a rate lower than $290.00 per

week are all unpersuasive. Further, one of those arguments raises a challenge to the legality of the Pension Fund's rehabilitation plan, which challenge the arbitrator properly rejected as outside of the scope of a withdrawal liability arbitration.

46. *Third,* to the extent the Opinion and Award as modified or enforced by this Court directs the Pension Fund to revise the Withdrawal Liability payment schedule (whether in line with the Pension Fund's alternative argument that a highest contribution rate of $320.94 per week should be used to calculate the payment schedule or in line with SC Transport's and Steelcase's argument that the highest pre-2015 contribution rate of $290.00 per week should be used to calculate the payment schedule), the portion of the Opinion and Award providing that the Pension Fund is to issue a credit against future monthly withdrawal liability payments for the SC Transport Controlled Group's withdrawal liability overpayments (as opposed to a refund for those overpayments) should be enforced. As the Pension Fund will show in any dispositive briefing in this matter, issuing a credit (as opposed to a refund) is the proper approach.

47. Pursuant to Article III, Section 6 of the Pension Fund Trust Agreement, Plaintiffs are also entitled to receive their attorneys' fees and costs should they prevail in this action.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment against Defendants, Steelcase Inc. and SC Transport, Inc., jointly and severally, and in favor of Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund and Charles A. Whobrey, as Trustee:

    (i) modifying the Opinion and Award by ordering the SC Transport Controlled Group to pay the Pension Fund in accordance with the Withdrawal Liability payment schedule set forth in the notice and demand, as referenced in paragraphs 15 and 16 above (*i.e.*, 240 monthly payments of $76,320.61,

    with the first monthly payment due on or August 1, 2019, and the final monthly payment due on July 1, 2039);

  (ii) in the alternative, modifying the Opinion and Award by ordering the SC Transport Controlled Group to pay the Pension Fund in accordance with the Withdrawal Liability payment schedule referenced in paragraph 42 above (*i.e.*, 240 monthly payments of $71,620.87, with the first monthly payment due on August 1, 2019, and the final monthly payment due on July 1, 2039) and enforcing the Opinion and Award by ordering the Pension Fund to provide the SC Transport Controlled Group a credit for its withdrawal liability overpayments, including interest; or

  (iii) enforcing in part and modifying in part the Opinion and Award by ordering the SC Transport Controlled Group to pay the Pension Fund in accordance with the Withdrawal Liability payment schedule referenced in paragraph 44 above (*i.e.*, 240 monthly payments of $64,716.31, with the first monthly payment due on August 1, 2019, and the final monthly payment due on July 1, 2039), and enforcing the Opinion and Award by ordering the Pension Fund to provide the SC Transport Controlled Group a credit for its withdrawal liability overpayments, including interest; and

  (iv) awarding Plaintiffs their attorneys' fees and costs.

(b) Such further or different relief as this Court may deem proper and just.

          Respectfully submitted,

          */s/ Lois J. Yu*
          Lois J. Yu (ARDC #6321772)
          Central States Law Department
          8647 West Higgins Road, 8th Floor
          Chicago, Illinois 60631
          (847) 939-2116
          lyu@centralstatesfunds.org

January 25, 2024           *ATTORNEY FOR PLAINTIFFS*