UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; and CHARLES A. WHOBREY, as Trustee, <br><br> Plaintiffs, <br><br> v. <br><br> STEELCASE INC. and SC TRANSPORT, INC., <br><br> Defendants. | No. 24-cv-663 <br><br> Judge Thomas M. Durkin |
| SC TRANSPORT, INC. and STEELCASE INC., <br><br> Plaintiffs, <br><br> v. <br><br> CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, <br><br> Defendant. | No. 24-cv-677 <br><br> Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

This case arose out of a withdrawal liability dispute between the Central States, Southeast and Southwest Areas Pension Fund ("the Fund") and Steelcase Inc. and SC Transport, Inc. (jointly, "SCT"). An arbitrator decided the dispute largely in SCT's favor. The Fund initially moved to vacate or, in the alternative, to modify the arbitration award, arguing that the arbitrator erred in calculating the amount due based on an incorrect interpretation of the relevant statutory provisions. R. 37. SCT

1

moved to enforce and partially modify the award, seeking compound interest on its overpayments and attorneys' fees. R. 35. While the motions were pending, the Seventh Circuit issued an opinion in *Event Media v. Cent. States, Se. & Sw. Areas Pension Fund v. Event Media Inc.*, 135 F.4th 529 (7th Cir. 2025). Based on that precedent, the Fund now consents to the enforcement of the part of the award requiring the use of SCT's highest pre-2015 contribution rate in calculating SCT's withdrawal liability payments. The only remaining issue across the two motions is SCT's request to modify the award to grant it compound interest and attorneys' fees. For the following reasons, that request is denied.

## Background

The parties jointly stipulated to the following facts in the underlying arbitration. R. 34. SCT was a contributing employer to the Fund. R. 34-3 ¶ 5. In 2008, the Fund's actuary certified it to be in "critical status" under the Pension Protection Act of 2006 ("PPA"), and the Fund adopted a rehabilitation plan. R. 34-24 at ¶¶ 10–11. A rehabilitation plan may require an employer to, among other things, increase its contributions for the plan to emerge from critical status. 29 U.S.C. § 1085(e)(1). The Fund's rehabilitation plan provided for annual contribution rate increases, but it did not change the Fund's existing annual benefit accrual rate of 1%. R. 34-20.

SCT withdrew from the Fund in 2019. The Multiemployer Pension Plan Amendments Act amended the Employee Retirement Income Security Act of 1974 to require employers who withdraw from underfunded plans to pay withdrawal liability. *Event Media*, 135 F.4th at 531 (citation omitted). The amount of withdrawal liability is based in part on the "highest contribution rate" during the ten years before

withdrawal. *See* 29 U.S.C. § 1399(c)(1)(C)(i)(II). Relevant here, under the Multiemployer Pension Reform Act of 2014 ("MPRA"), any contribution rate increase required by or made for a rehabilitation plan is disregarded in determining the highest contribution rate, subject to certain exceptions. *See* 29 U.S.C. §§ 1085(g)(3)(A)–(B). One of those exceptions is for "additional contributions . . . used to provide an increase in benefits, including an increase in future benefit accruals, permitted by subsection (d)(1)(B) or (f)(1)(B)." 29 U.S.C. § 1085(g)(3)(B).

The Fund calculated SCT's withdrawal liability to be a lump sum of $33,652,457.49 or 240 monthly payments of $76,320.61. The Fund included post-2014 contribution rate increases and calculated SCT's withdrawal liability using the highest pre-withdrawal contribution rate of $342.00 per week. In arbitration, the parties disputed whether it was appropriate to include pre-2015 and post-2014 contribution rate increases in the calculation of SCT's withdrawal liability under the statutory framework. The arbitrator held that the Fund was required to use SCT's highest pre-2015 contribution rate of $290.00 per week in calculating the withdrawal liability payments. R. 34-26 at 7–10; R. 34-29 at 4.[1] The parties agreed that with this contribution rate, the resulting payment schedule would be 240 monthly payments of $64,716.31. R. 34-24 ¶ 26. The arbitrator directed the Fund to refund SCT's overpayments in a lump sum with uncompounded interest "at an annualized rate equal to two percent (2%) plus the prime interest rate established by JPMorgan

---

[1] The arbitrator issued an opinion and award in December 2023 and a supplemental opinion and award modifying and clarifying the original award in March 2024.

Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged," which is the interest rate the Fund applies to past due withdrawal liability payments. R. 34-29 at 3–4. The arbitrator denied SCT's request for compound interest and attorneys' fees. *Id.* The Fund issued a lump sum refund payment to SCT, which consisted of the total amount of monthly withdrawal liability overpayments and uncompounded interest on the overpayments at the rate set forth in the award.

Both parties filed motions to enforce and modify the arbitrator's award. The Fund asked the Court to modify the award to account for post-2014 contribution payments in the calculation of withdrawal liability payments, order a corresponding partial return of the Fund's prior refund and "true-up" payment, and enforce the arbitrator's rejection of SCT's argument that certain pre-2015 contribution rate increases should be excluded from the calculation. R. 37. SCT asked the Court to enforce the part of the award directing the Fund to recalculate withdrawal liability using the highest pre-2015 contribution rate and modify the award to grant compound interest and reasonable attorneys' fees for both the arbitration and the instant litigation. R. 35.

While their motions were pending, the Seventh Circuit issued an opinion in *Event Media*, interpreting §§ 1085(f)(1)(B) and 1085(g)(3) to require the Fund to disregard post-2014 contribution rate increases in calculating withdrawal liability schedules. 135 F.4th at 533–34. Based on this precedent, the Fund now consents to the enforcement of the part of the award requiring the Fund to use SCT's highest pre-2015 contribution rate in calculating withdrawal liability payments. R. 47 ¶ 12. The

4

parties agree that this consent resolves both SCT's request to enforce the arbitrator's decision that post-2014 rates must be excluded from the calculation and the Fund's request to enforce the arbitrator's decision that pre-2015 rates may be included. *Id*. It also renders moot the Fund's request for a partial return of the refund and a "true-up" payment. *Id*. The only issue that remains is SCT's request to modify the arbitration award to grant SCT compound interest and reasonable attorneys' fees. *Id*. ¶ 13.

## Standard of Review

Any party to an arbitration proceeding that resolved a dispute about withdrawal liability from a multiemployer pension plan may bring an action in a federal district court within 30 days "to enforce, vacate, or modify the arbitrator's award." 29 U.S.C. § 1401(b)(2). The arbitrator's findings of fact are presumed correct and are "rebuttable only by a clear preponderance of the evidence." 29 U.S.C. § 1401(c). Legal questions are subject to *de novo* review by the district court. *Central States, Southeast & Southwest Areas Pension Fund v. Schilli Corp.*, 420 F.3d 663, 667 (7th Cir. 2005).

## Discussion

I.  Compound Interest

SCT argues that it should receive compound interest on its withdrawal liability overpayments. The relevant Pension Benefit Guaranty Corporation ("PBGC") regulations provide that "[t]he plan sponsor shall credit interest on the overpayment from the date of the overpayment to the date on which the overpayment is refunded to the employer at *the same rate as the rate for overdue withdrawal liability payments*,

5

as established under § 4219.32 or by the plan pursuant to § 4219.33." 29 C.F.R. § 4219.31(d) (emphasis added). The rate for past due withdrawal liability payments, as set forth in the Fund's trust agreement and plan document, is "an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged." R. 34-27 at 34. That is the interest rate set forth in the arbitrator's award, without any compounding.

SCT argues that the interest should be compounded as a matter of equity. SCT first points to Seventh Circuit precedent regarding compounding prejudgment interest. "As a general rule, the decision of whether to award compound or simple prejudgment interest is left to the discretion of the trial court." *Am. Nat. Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 937 (7th Cir. 2003). However, the Seventh Circuit has noted on several occasions that "compound prejudgment interest is the norm in federal litigation." *See id.*; *Cement Div., Nat'l Gypsum Co. v. City of Milwaukee*, 144 F.3d 1111 (7th Cir. 1998); *Matter of Oil Spill by Amoco Cadiz Off Coast of France on Mar. 16, 1978*, 954 F.2d 1279, 1332 (7th Cir. 1992). Thus, if a district court in a federal question case decides to deviate from the norm of compound interest, the court must explain why it believes it appropriate to do so. *Yellow Freight*, 325 F.3d at 937 (citing *West Virginia v. United States*, 479 U.S. 305, 310, 107 S. Ct. 702 (1987)).

Here, the Court believes it appropriate to deviate from the norm of compound interest because of the applicable PBGC regulation and the express language of the

Fund's trust agreement and plan. Section 4219.31(d) creates reciprocity between the interest a fund owes to an employer on overpayments of withdrawal liability and the interest an employer would owe the fund on overdue withdrawal liability payments, as established by the plan. The trust agreement and plan specifically define the interest an employer would owe the fund on overdue withdrawal liability payments, and it is not compounded. Accordingly, the Court does not find it appropriate to compound interest on SCT's overpayments.

SCT alternatively contends that § 4219.31(d) actually supports compound interest. SCT cites two of the Fund's rules: (1) interest after entry of a judgment against an employer for overdue withdrawal liability is compounded annually; and (2) any judgment against an employer for overdue withdrawal liability payments includes the greater of doubling the interest or single interest plus liquidated damages. R. 34-28 at 29. In SCT's view, under § 4219.31(d), the Court should apply these rules to compound the interest on SCT's pre-judgment overpayments. But these rules relate to withdrawal liability *judgments*. Under § 4219.31(d), the interest rate for withdrawal liability overpayments is equal to the rate for overdue "withdrawal liability *payments*," not withdrawal liability judgments. Because the Fund does not compound interest on overdue withdrawal liability payments, § 4219.31(d) does not entitle SCT to compound interest for withdrawal liability overpayments. Therefore, SCT's request to modify the arbitration award to provide for compound interest is denied.

II.     Attorneys' Fees

SCT also seeks to modify the arbitration award to grant SCT reasonable attorneys' fees. An arbitrator may require a party that contests an arbitration in bad faith to pay the "reasonable attorneys' fees" of the other party. 29 C.F.R. § 4221.10(c). In the underlying arbitration, the arbitrator found that the Fund's defense "was not frivolous or without support" and denied SCT's request for attorneys' fees. R. 34-26 at 11–12. The parties disagree about whether that finding was a factual determination subject to deference or a legal determination subject to *de novo* consideration.

But even if this Court were to review the issue *de novo*, it would not find bad faith on the part of the Fund. SCT asserts bad faith based on what it characterizes as the Fund's "opportunistic" and "nonsensical" interpretation of the relevant statutory framework: that the increases in benefit accruals resulting from the contribution rate increases in the rehabilitation plan are "increase[s] in benefits" under § 1085(g)(3)(B), thus qualifying for an exception that increases withdrawal liability, but not under §§ 1085(f)(1)(B) and 1085(f)(3)(B), thus avoiding the PPA's supposed bar on benefit increases. SCT contends that if the Fund merely followed the plain text of § 1085(g)(3)(B), the arbitration and its costs would have been unnecessary. As a corollary, SCT also maintains that for "a pension fund with annual deficits of more than a billion dollars . . . implement[ing] benefit increases is outrageous by itself," R. 43 at 4, and that the rehabilitation plan violates the PPA.

As an initial matter, this Court is not tasked with determining whether the rehabilitation plan was unlawful. *Id.* at 3 (SCT stating it was not seeking a declaratory judgment from the arbitrator that the rehabilitation plan was unlawful). So neither the purported illegality of the rehabilitation plan nor the Fund's decision to increase contribution rates are a basis for finding bad faith in contesting the arbitration.

By contrast, the legal positions taken by the Fund are certainly relevant to whether it contested the arbitration in bad faith. But those positions are not so baseless that they call out for an award of attorneys' fees. Indeed, the Fund clarifies that its (pre-*Event Media*) position was not that the benefit accrual increases resulting from the contribution rate increases were not benefit increases under the PPA, but rather that they were permitted by (i.e., not prohibited by) the PPA. At the time the Fund contested the arbitration, its position on the meaning and interplay of § 1085(f)(1)(B) and § 1085(g)(3) was against the great weight of authority, namely nine arbitration awards. However, there were also two arbitration awards that adopted the Fund's argument and a lack of controlling federal case law on the issue. In other words, the Fund's position was undoubtedly weak, but it was not frivolous. *See Cent. States, Se. & Sw. Areas Pension Fund v. McKesson Corp.*, No. 23 CV 16770, 2025 WL 81358, at *6 (N.D. Ill. Jan. 13, 2025) (denying motion to modify award to include attorneys' fees where defendant accused the Fund of contesting the arbitration in bad faith by raising the same statutory argument raised here); *Royal Ice Cream Co. v. Cent. States, Se. & Sw. Areas Pension Fund*, 732 F. Supp. 3d 888,

9

893 (N.D. Ill. 2024) (same). In any case, the Fund would have contested arbitration even without the statutory argument ultimately rejected by the Seventh Circuit, which related to post-2014 contribution rate increases, because SCT argued that certain pre-2015 increases should have been excluded. Therefore, the Fund did not act in bad faith by contesting the arbitration.

Alternatively, SCT claims that the Court should exercise its inherent authority under Federal Rule of Civil Procedure 11 to award fees incurred after the Fund appealed the arbitration award, at which time there were eleven awards rejecting the Fund's arguments, or at the very least after Judge Chang's decision in *Cent. States, Se. & Sw. Areas Pension Fund v. Event Media, Inc.*, No. 22-cv-6133, 2024 WL 1363542 (N.D. Ill. Mar. 29, 2024), which overturned the two arbitration awards in the Fund's favor. But the fact that several arbitrators and district court judges had agreed that the Fund's statutory interpretation was wrong did not render the Fund's argument frivolous. Up until the Seventh Circuit affirmed Judge Chang's decision, there was no binding precedent on the issue. *See United States v. Bey*, 748 F.3d 774, 776 (7th Cir. 2014) ("Most claims or arguments held to be 'frivolous' are . . . so clearly blocked by statute, regulation, binding or unquestioned precedent, or some other authoritative source of law that they can be rejected summarily."); *cf. Wegbreit v. Comm'r*, 21 F.4th 959, 964 (7th Cir. 2021) (defining an appeal as frivolous if it "presents arguments that are so insubstantial that they are guaranteed to lose").

Trading quotations from the oral argument and opinion in *Event Media*, the parties quibble about how the Seventh Circuit characterized the viability of the

Fund's position. *Compare* 135 F.4th at 534 (stating that "[t]he Fund makes a reasonable argument about § 1085(g)(3)'s purpose") *with* Argument Audio at 3:15 (asking the Fund's counsel to cite "any other case where any court in America has ever read any statute that way"). Regardless, the Seventh Circuit recognized that the appeal presented "a question of first impression." *Event Media*, 135 F.4th at 532. The Fund's decision to maintain its position as to the interpretation of § 1085(f)(1)(B) and § 1085(g)(3) in the absence of binding precedent was not in bad faith and does not warrant an award of reasonable attorneys' fees.

## Conclusion

For the foregoing reasons, the Court denies SCT's motion to modify the arbitration award to require the payment of compound interest and reasonable attorneys' fees. The Fund's motion to modify and enforce the arbitration award and SCT's motion to enforce the arbitration award are otherwise denied as moot.

ENTERED:

*Thomas M Durkin*
_____

Honorable Thomas M. Durkin
United States District Judge

Dated: July 31, 2025

11